38

FRED WILSON DRILLING COMPANY,
INC., Petitioner,

v.

F. Ray MARSHALL, Secretary of Labor,
U. S. Department of Labor, Occupational
Safety and Health Review Commission,
Respondent.

No. 78–3077.

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 1980.

Fitzgerald & Sorola, Attys., David S. Fitzgerald, Jr., Lafayette, La., for petitioner.

Domenique Kirchner, Allen H. Feldman, U.S. Dept. of Labor, Washington, D.C., for respondent.

Before GOLDBERG, GARZA and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

█ Fred Wilson Drilling Company appeals a final order of the Occupational Safety and Health Review Commission which sustained the administrative law judge's ("ALJ") findings.[1] The ALJ fined the drilling company $250 for violating standard 29

---

1. Under 29 U.S.C. § 661(i), the "report of the administrative law judge shall become the final order of the Commission within thirty days after such report by the administrative law judge, unless within such period any Commission member has directed that such report shall be reviewed by the Commission." Although Wilson petitioned for review by the Commission, no member directed review. The ALJ's July 3, 1978 decision therefore became a final order of the Commission on August 2, 1978. See 29 C.F.R. §§ 2200.91, 2200.91a.

C.F.R. § 1910.36(b)(1) by failing to provide a "Geronimo" escape line for derrickmen working on the "monkey board" platform of its oil drilling rig number nine, and $100 for violating standard 29 C.F.R. § 1910.-212(a)(1) by failing to guard the rig's Kelly bushing and rotary table. We affirm the finding of liability for violation of the first standard; we vacate the second.

### Geronimo Line

■ The monkey board is a horizontal platform on the derrick approximately ninety feet above the derrick floor and over 100 feet above ground. Employees work on this platform handling sections of drill pipe during drilling operations. Although there are a number of means of exit from this platform, the ALJ's finding that no escape route accessible from the platform would allow descent other than straight down was uncontradicted. The Geronimo line, by providing a method of egress at an angle away from the derrick, provides a safe means of escape in the event of a fire or explosion resulting from drilling, and therefore satisfies 29 C.F.R. § 1910.36(b)(1). Because we find substantial evidence on the record as a whole to support the Commission's factual determinations, 29 U.S.C. § 660(a), we affirm.

### Kelly Bushing

■ The drilling company was found in violation of the standard 29 C.F.R. § 1910.-212(a)(1) for failure to guard the Kelly bushing and rotary table. The rotary table, flush with the derrick floor, is approximately three feet in diameter and is constantly rotating during the drilling process. The Kelly bushing rests upon the rotary table surrounding the Kelly, which is a heavy, vertical steel pipe. Power is transmitted from a bank of diesel engines, generators, or power units through a belt system to the rotary table/bushing unit. The rotary table turns the bushing, and together they transmit rotation power to the Kelly while simultaneously permitting vertical movement of the Kelly. The Kelly in turn transmits power to the drill string and cutting bit.

29 C.F.R. § 1910.212 provides, in part, as follows:

§ 1910.212 General requirements for all machines.

(a) *Machine guarding*—(1) *Types of guarding.* One or more methods of machine guarding shall be provided to protect the operator and other employees in the machine area from hazards such as those created by point of operation, ingoing nip points, rotating parts, flying chips and sparks. Examples of guarding methods are—barrier guards, two-hand tripping devices, electronic safety devices, etc.

(2) *General requirements for machine guards.* Guards shall be affixed to the machine where possible and secured elsewhere if for any reason attachment to the machine is not possible. The guard shall be such that it does not offer an accident hazard in itself.

In finding Fred Wilson in violation of this standard, the ALJ acknowledged that use of a Kelly bushing guard would pose serious hazards, but concluded that an unguarded bushing, on balance, presented the more unsafe situation. Because Wilson appeared to have acted under a good faith belief that it might be more hazardous to use such a guard than not to use one, the ALJ reduced the penalty recommended by the Secretary from $250.00 to $100.00.

The ALJ based his finding on the testimony of an OSHA compliance officer whose familiarity with this particular aspect of the drilling industry appears to have been minimal. The inspector had never seen a Kelly bushing guard on any rigs he had inspected, had not visited a factory at which guards were manufactured and had never viewed a Kelly bushing guard other than in brochures published by their manufacturers. The officer admitted that he did not understand how a guard is placed on the rig and that he knew nothing of the maintenance of a Kelly bushing. Finally the officer conceded he did not know what effect a guard would have in the event a "blowout" occurred.

The ALJ also relied on the testimony of the president of the Kelly Bushing Guard Manufacturing Company, who is also the designer of the guard manufactured by his company. Although he had twenty-three years experience as a welder, he was not an engineer, had no formal education beyond the tenth grade, and had not had his guard independently tested. His company, which had been in business for less than a year at the time of the hearing, carried no products liability insurance and had sold only one guard.

Wilson, by contrast, presented the testimony of an oil well drilling expert who was familiar with a variety of Kelly bushing guards, and found that they created hazards by obstructing passageways on the limited space of the rig floor, by confining the drilling operator's view of the Kelly, and by potentially acting as deflecting shields in the event of a blowout, thereby increasing the likelihood of a fire. Wilson's Director of Safety and Personnel also testified and stated that the company had investigated the feasibility of using Kelly bushing guards, but had decided against their use because of the additional hazards created. He also testified that the company had no record of any accidents caused by a Kelly bushing in operation without a guard.

The finding of the Commission with respect to questions of fact can be sustained only if supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 660(a). While we recognize that decisions of other administrative law judges unreviewed by the Review Commission do not constitute binding precedent, *Willamette Iron and Steel Co. v. Sec. of Labor*, 604 F.2d 1177, 1180 (9th Cir. 1979); *Leone Construction Co.*, 1975–76 OSHA (CCH) ¶ 20,387 (No. 4090, 1976); we are not unmindful of decisions in analogous cases.

The administrative law judge in the case at bar did not, in his finding of fact, indicate that the bushing contained any j-bolts or other protuberances. In both *Secretary of Labor v. Grey Wolf Drilling Co.*, OSHRC Docket No. 77–2328, 1978 (CCH) OSHD ¶ 22,961 and *Secretary of Labor v. Grey Wolf Drilling Co.*, OSHRC No. 77–3803,

1978 (CCH) OSHD ¶ 23,183, the ALJ specifically found that an unguarded Kelly bushing which had no j-bolts or other protuberances constituted less of a hazard than one equipped with a guard. Although the ALJ in *Secretary of Labor v. Signal Oilfield Service, Inc.*, OSHRC Docket No. 77–0226, 1978 (CCH) OSHD ¶ 22,758 upheld the Secretary's citation for failure to guard the Kelly, the ALJ specifically found that the Kelly bushing had at least four protrusions exposed around its outer perimeter. The court emphasized, however, that its holding did not apply to the new type Kelly bushing installed after the inspection which had a smooth exterior, a caveat noted and approved by the ALJ in the *Grey Wolf* decisions.

At oral argument in the case at bar, the assertion of Wilson's counsel that its Kelly bushing was of the same nature and construction as that used in *Grey Wolf* was unrebutted. While noting that the OSHA compliance officer had testified that the Kelly bushing had protruding bolts, Wilson's counsel explained that the officer, who, as noted, evinced no real knowledge of the drilling industry, must have been referring to the bevelled and rounded pins which fit into the rotary table. Complainant's exhibit 10, a picture of the Kelly bushing, supports Wilson's argument and reveals no j-bolts or other protrusions. Thus, every other administrative law judge that has considered this question has found that, given the present state of development, a Kelly bushing like Wilson's constitutes more of a hazard guarded than unguarded. We believe the present record requires the same finding.

The Commission's order upholding the ALJ's citation and fine for violation of 29 C.F.R. § 1910.212(a)(1) is not supported by substantial evidence and is therefore set aside.

AFFIRMED IN PART AND VACATED IN PART.