**TRUE DRILLING COMPANY, a co-partnership, Petitioner,**

v.

**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, and Occupational Safety and Health Review Commission, Respondent.**

No. 81–7033.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 5, 1982.

Decided April 11, 1983.

John L. Gallinger, Holland & Hart, Billings, Mont., for petitioner.

Domenique Kirchner, John A. Bryson, Washington, D.C., for respondent.

Before BROWNING, Chief Judge, and WALLACE and BOOCHEVER, Circuit Judges.

BROWNING, Chief Judge:

Petitioner True Drilling Company appeals a final order of the Occupational Safety and Health Review Commission affirming the Secretary of Labor's citation charging the company with a "serious violation"[1] of section 5(a)(2) of the Occupational Safety and Health Act, 29 U.S.C. § 654(a)(2) and 29 C.F.R. § 1910.212(a),[2] by failing to install machine guarding to protect employees from rotating parts on petitioner's drilling equipment.

The Secretary's citation was directed at the kelly bushing and rotary table on petitioner's oil drilling rig number 23 at Sidney, Montana. The kelly bushing and rotary table, located in the center of the derrick floor, are part of the power system which transmits torque from the rig's engines to the drilling bit. They rotate at speeds of 45 to 200 rpm during drilling. The kelly bushing rests on the rotary table. The derrick floor covers most of the rotary table, but the kelly bushing and a six to eight inch band of the rotary table at the base of the kelly bushing are exposed.

The Secretary cited petitioner for failing to guard the kelly bushing and exposed portions of the rotary table. Petitioner contested the citation, contending (1) the kelly bushing used by petitioner was not hazardous because it had recessed bolts rather than protruding "j-bolts" found on older models; (2) alternatively, the use of a

guard would create an equal or greater hazard; and (3) the Secretary was collaterally estopped from relitigating these issues because they had been decided adversely to the Secretary in similar proceedings brought against other drilling companies.

The administrative law judge affirmed the citation. Since no Commissioner directed review, the order became final. 29 U.S.C. § 661(i). This court has jurisdiction under 29 U.S.C. § 660(a). We affirm.

## I. *Existence of Hazard*

■ The administrative law judge's finding that the unguarded kelly bushing and rotary table constituted a hazard is "supported by substantial evidence on the record considered as a whole . . . ." 29 U.S.C. § 660(a). *See National Steel & Shipbuilding Co. v. OSHRC,* 607 F.2d 311, 316 (9th Cir.1979).

Petitioner concedes old style kelly bushings with protruding "j-bolts" constitute a hazard since the protruding bolts may catch hoses, chains, or other equipment commonly used in the vicinity of the rotating parts. Petitioner contends, however, that the modern design of the kelly bushing used on its rig eliminates this hazard by countersinking the bolts into the bushing housing. The Secretary presented evidence that employees on petitioner's rig regularly passed within two feet of the rotating parts, that some employees were inexperienced, that there were chains, hoses, and tools on the rig floor, and that the floor was often wet and muddy. The judge concluded that in such circumstances the "relative smoothness" of the modern bushing would not eliminate the demonstrated hazards posed by the "j-bolt" design, and that the danger remained that employees would fall on the rotating surface, that objects would fall

---

1. As defined in section 17(k) of the Act, 29 U.S.C. § 666(j).

2. 29 C.F.R. § 1910.212(a) provides in part:
   (a) *Machine guarding—(1) Types of guarding.* One or more methods of machine guarding shall be provided to protect the operator and other employees in the machine area from hazards such as those created by point of operation, ingoing nip points, rotating parts, flying chips and sparks. Examples

of guarding methods are—barrier guards, two-hand tripping devices, electronic safety devices, etc.
   (2) *General requirements for machine guards.* Guards shall be affixed to the machine where possible and secured elsewhere if for any reason attachment to the machine is not possible. The guard shall be such that it does not offer an accident hazard in itself.

onto and be propelled off the rotating surface, and that chains or other objects would wrap around the bushing. The administrative law judge's conclusion was supported by the testimony of the Secretary's witnesses and by the occurrence of two accidents on other rigs, reported in *Brinkerhoff Signal, Inc.,* OSHRC No. 79–2589 (1980), in which an employee was killed and another lost both legs when a chain in one instance, and a water hose in another, became entangled in modern kelly bushings of the same manufacturer as that used on petitioner's rig.

Petitioner's other objections to the finding that a hazard existed have no merit. Testimony that the safety precautions undertaken by the drilling industry included a standard practice not to permit employees to approach moving parts during drilling was not impressive in light of direct evidence, including photographs, reflecting a contrary practice on petitioner's rig. The compliance officer's testimony that a citation might or might not be issued when an unguarded kelly bushing was present did not reflect inconsistency in regulation, but rather, as the officer testified, that surrounding circumstances, including working conditions and safety procedures, would determine whether employees were exposed to a hazard because of the unguarded machinery. The fact that some state regulatory schemes did not require guards, and that the company that manufactured petitioner's kelly bushing also manufactured a kelly guard but did not require that both be purchased together, were only distantly relevant, if relevant at all. There was sufficient evidence that the exposed portion of the rotary table, as distinguished from the kelly bushing, was also hazardous, since it increased the danger that employees might fall. Finally, there is no merit in petitioner's claim that the administrative law judge committed reversible error by considering previous uncontested citations against peti-

tioner because the citations had not been admitted into evidence. The record is unclear whether the compliance officer's testimony regarding the citations was excluded as well as the citations themselves. In any event, the citations were of little relevance in finding a hazard and the judge does not appear to have relied on them. If error occurred, it was harmless. *See General Dynamics Corp. v. OSHRC,* 599 F.2d 453, 463–64 (1st Cir.1979).

## II. *Greater Hazard Defense*

■ To establish the greater hazard defense, an employer must show "(1) that the hazards of compliance are greater than the hazards of noncompliance, (2) that alternative means of protecting employees are unavailable, and (3) the unavailability or inappropriateness of obtaining a variance." *Noblecraft Industries, Inc. v. Secretary of Labor,* 614 F.2d 199, 205 (9th Cir.1980). *See Greyhound Lines West v. Marshall,* 575 F.2d 759, 762 (9th Cir.1978). The administrative law judge concluded petitioner had failed to satisfy any of the three requirements.

■ Nothing in the record indicates that petitioner sought a variance under section 6(d) of the Act, 29 U.S.C. § 655(d), or that such a variance would have been unavailable or inappropriate. On the contrary, as noted earlier, a compliance officer testified that a citation might not be necessary if the employer adopted and effectively enforced adequate safety procedures to preclude exposure of employees to the rotating equipment.[3]

■ Petitioner contends that the employer need not show the unavailability or inappropriateness of obtaining a variance where, as here, the employer is charged under 29 C.F.R. § 1910.212(a). This is true, petitioner argues, because by the express terms of subsection (2) of section 1910.-212(a), a violation is not made out unless the government carries the burden of show-

---

**3.** Petitioner's recent citation to OSHA Instruction STD 1–12.28 issued in February 1983 supports the conclusion that a variance would have been appropriate. The instruction allows employers using smooth kelly bushings to com-

ply with 29 C.F.R. 1910.212(a) either by using a kelly bushing guard or by instituting a rigorous set of safety measures detailed in the instruction.

ing that a machine guard is available "that . . . does not offer an accident hazard in itself."[4] The regulation sets forth no such burden, and the Commission has interpreted the language of subsection (2) of section 1910.212(a) as imposing a duty that must be discharged by the employer in selecting and installing machine guarding and not as creating an additional element of a violation that must be established by the government. Subsection (2) "does not provide an employer with a defense. Instead, it imposes an affirmative duty on the employer to guard the machine in a manner that does not create a separate hazard to employees. A guard must be both efficacious and safe." *Buckeye Industries, Inc.,* 1975–76 O.S.H. Dec. (CCH) ¶ 20,239 at 24,120 (1975). *See also, The Rogers Manufacturing Co.,* 1979 O.S.H. Dec. (CCH) ¶ 23,800 at 28,879 (1979); *Weyerhaeuser Co.,* 1976–77 O.S.H. Dec. (CCH) ¶ 21,465 at 25,751 n. 15 (1977).[5]

We must "accept the agency's construction of its own regulation if it is not plainly erroneous or inconsistent with the regulation . . . ." *United States v. Whelan,* 463 F.2d 1093, 1094 (9th Cir.1972). *See Irvington Moore, Division of U.S. Natural Resources, Inc. v. OSHRC,* 556 F.2d 431, 434 (9th Cir.1977). The Commission's interpretation of section 1910.212(a)(2) is neither. An employer is required to seek a variance as a precondition to asserting the greater hazard defense in order to discourage employers from unilaterally and perhaps incorrectly concluding their employees would be better protected by deviating from the prescribed safety standards. *Noblecraft Industries, Inc. v. Secretary of Labor,* 614 F.2d at 205; *General Electric Co. v. Secretary of Labor,* 576 F.2d 558, 561 (3rd Cir. 1978). Petitioner advances no reason why

this rationale does not apply to the machine guarding standard.

Petitioner's failure to seek a variance is sufficient alone to sustain the administrative law judge's rejection of petitioner's defense that available machine guards would have created a greater hazard than the unguarded kelly bushing and rotary table. It is desirable to reach the factual merits of the issue, however, in light of the Fifth Circuit's decision in *Fred Wilson Drilling Co. v. Marshall,* 624 F.2d 38.

In that case, the administrative law judge concluded "that use of a Kelly bushing guard would pose serious hazards, but concluded that an unguarded bushing, on balance, presented the more unsafe situation." 624 F.2d at 39. On review, the Fifth Circuit Court of Appeals held the ALJ's finding was not supported by substantial evidence. The court concluded that on the administrative record before it, "given the present state of development, a Kelly bushing like Wilson's constitutes more of a hazard guarded than unguarded." *Id.* at 40. The guard considered in the *Wilson* case was one designed by Kelly Bushing Guard Manufacturing Company. *Id.*

In contrast, as we have seen, the record in this case contained substantial evidence that the kelly bushing and rotary table in the circumstances of their use on petitioner's rig posed a serious hazard to petitioner's employees. The record also discloses exhaustive consideration of the effectiveness and relative safety of guards for kelly bushings and rotary tables with particular emphasis on recent models developed by Varco International Inc., the manufacturer of the kelly bushing used on petitioner's rig. Petitioner's witnesses testified to a variety of possible hazards associated with

---

4. See note 2.

5. Petitioner relies upon a contrary reading of subsection (2) by the administrative law judge in *Secretary of Labor v. Fred Wilson Drilling Co.,* OSHRC No. 77–3578 (1978). The administrative law judge's interpretation is inconsistent with the Commission's rulings cited in the text, and was not approved by the Fifth Circuit on review. *See Fred Wilson Drilling Co. v. Marshall,* 624 F.2d 38 (5th Cir.1980).

The OSHRC decisions cited in the text also dispose of petitioner's argument that it was a sufficient defense that available machine guards posed any hazard at all and that it was therefore error for the administrative law judge to require a showing that they imposed a greater hazard than the unguarded kelly bushing and rotary table.

the use of guards for kelly bushings. However, the Secretary's witness testified to design features of the Varco guard that reduced or eliminated these risks, and reported Varco had received no complaints or reports of accidents involving the Varco guards. The administrative law judge noted that the testimony regarding hazards from guards was based primarily upon guards of older types, particularly Childress's "clam shell" guard, and that petitioner's expert witnesses had not seen a kelly bushing guard or had not seen the newer Varco guards or talked with persons who had used them. The judge noted that earlier cases, including *Fred Wilson Drilling Co.*, had not dealt with "developing refinements in kelly bushing guards," particularly the Varco guard, first marketed in 1977.

The administrative law judge's finding that petitioner had "failed to prove [its] affirmative defense that properly designed guards present a hazard or that a greater hazard results from guarding the rotating rotary table or kelly bushing" is supported by substantial evidence.

### III. *Collateral Estoppel*

Petitioner argues that whether an unguarded kelly bushing and rotary table of the kind involved in this case constitutes a violation of 29 C.F.R. § 1910.212(a) has been decided against the Secretary in several prior cases, and the Secretary is estopped from relitigating the issue.[6] The Secretary asserts that the issue presented in the prior cases and in the present case are not the same and the first prerequisite to collateral estoppel is therefore lacking. *See Montana v. United States,* 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979). Petitioner responds that the administrative law judge did not reject collateral estoppel on this ground, but rather on the ground that application of the doctrine would be contrary to public policy, and his decision may be affirmed only on the ground on which it was based. *See SEC v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

We need not decide whether petitioner properly invokes *Chenery.* The grounds upon which the administrative law judge decided not to estop the Secretary encompass the ground urged by the Secretary and fully justify the judge's decision.

■ The thrust of the judge's position was that estoppel was inappropriate because in the earlier cases administrative law judges had ruled for and against the Secretary in cases involving various types of kelly bushings and kelly bushing guards and the "equation of employer-employee safety is an ever changing one," involving "new knowledge and developments involving potential safety or hazards." The judge also noted that in this case there was no pattern of harassment of a particular employer as there had been in *Continental Can Co. v. Marshall,* 603 F.2d 590 (7th Cir.1979). It is evident from the remainder of the opinion as well as from these remarks that the administrative law judge on the basis of the approach taken in prior cases and in light of rapidly developing knowledge regarded the issue in each case to be whether the particular kelly bushing in the circumstances in which it was used presented a hazard to the employees and, if so, whether the hazard exceeded that of a kelly bushing protected by the guarding devices available at the time.

The judges in this and prior cases focused on such factors as the precise configuration of the kelly bushing and rotary table involved, how clean and free of tools the derrick floor was kept, whether the employer had and enforced safety rules preventing employees from entering the danger zone, whether and how often employees performed functions close to dangerous equipment, the experience of the workforce, and the availability of safe and feasible guards. None of the cases petitioner relies on found

6. Petitioner cites *Fred Wilson Drilling Co. v. Marshall,* 624 F.2d 38; Hughes Drilling Co., OSHRC Nos. 76–2945 & 76–3574 (1979); Grey Wolf Drilling Co. (Grey Wolf II), OSHRC No. 77–3803 (1978); Circle Bar Drilling Co., OSHRC No. 77–3581 (1978); Grey Wolf Drilling Co. (Grey Wolf I), OSHRC No. 77–2328 (1978); and MND Drilling Corp., OSHRC No. 76–4149 (1977).

modern kelly bushings were not hazardous or that Varco kelly bushing guards posed a greater hazard. In *Grey Wolf II,* for example, the judge specifically conditioned his finding of no hazard on the employer's excellent housekeeping and stringent safety rules, and indicated he would have found a violation had the employer used a kelly spinning chain, which could get caught in the kelly bushing, and which was used at petitioner's rig. The court in *Fred Wilson Drilling Co.* was aware of no accidents involving modern kelly bushings and concluded, on balance, not that the kelly bushing was not hazardous, but that the kelly guard at issue in that case, which was not a Varco guard, constituted more of a hazard than the unguarded kelly bushing. 624 F.2d at 40.

The application of collateral estoppel is discretionary. *Mendoza v. United States,* 672 F.2d 1320, 1326–29 (9th Cir.1982); *Western Oil & Gas Association v. United States Environmental Protection Agency,* 633 F.2d 803, 809 (9th Cir.1980); *Porter & Dietsch, Inc. v. FTC,* 605 F.2d 294, 300 (7th Cir.1979). The administrative law judge declined to estop the Secretary in this case, and appropriately so, because the questions presented in prior cases were different than the question presented in this case, *Montana v. United States,* 440 U.S. at 155, 99 S.Ct. at 974, and, if treated as the same, because some prior decisions were favorable to the Secretary, *Mendoza,* 672 F.2d at 1328, and because there was no harassment though repeated citation of the same employer, *International Harvester Co. v. OSHRC,* 628 F.2d 982, 985 (7th Cir.1980).

AFFIRMED.