## GENERAL ELECTRIC COMPANY, Petitioner,

v.

## SECRETARY OF LABOR and Occupational Safety and Health Review Commission, Respondents.

### No. 77–1616.

United States Court of Appeals, Third Circuit.

Argued Feb. 21, 1978.
Decided May 8, 1978.

---

David C. Toomey, Duane, Morris & Heckscher, Philadelphia, Pa., for petitioner.

Carin A. Clauss, Sol. of Labor for Occupational Safety and Health, Daniel J. Mick, Dennis K. Kade, U. S. Dept. of Labor, Washington, D. C., for respondents.

Before ADAMS, HIGGINBOTHAM, Circuit Judges and MARKEY, Chief Judge.*

## OPINION OF THE COURT

HIGGINBOTHAM, Circuit Judge.

The General Electric Company has petitioned this Court to review a judgment and order of the Occupational Safety and Health Review Commission (the Commission). That order affirmed a citation charging General Electric with a non-serious violation of § 5(a)(2) of the Occupational Safety and Health Act (the Act)[1] for violating the standard of 29 C.F.R. § 1910.-22(c).[2] We have jurisdiction of this matter pursuant to 29 U.S.C. § 660(a). The order of the Commission will be affirmed.

On December 19, an agent of the Secretary of Labor inspected General Electric's plant in Erie, Pennsylvania. As a result of this inspection, a citation was issued alleging a violation of 29 C.F.R. § 1910.23(c)(1) pertaining to an unguarded pit in the paintroom of Building 12.[3]

---

* Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, Washington, D. C., sitting by designation.

1. 29 U.S.C. §§ 651–78. § 5(a)(2), 29 U.S.C. § 654(a)(2) provides:
   (a) Each employer—
   (2) shall comply with occupational safety and health standards promulgated under this chapter.

2. 29 C.F.R. § 1910.22(c) provides:
   This section applies to all permanent places of employment, except where domestic, mining, or agricultural work only is performed. Measures for the control of toxic materials are considered to be outside the scope of this section.
   (c) Covers and guardrails. Covers and/or guardrails shall be provided to protect personnel from the hazards of open pits, tanks, vats, ditches, etc.

3. General Electric had previously been cited with a violation of this same standard with respect to an assembly area in Building 12. This violation had been corrected by the time of the December 19 investigation.

The paintroom which is the subject of the citation in question is used to paint locomotives and transit cars. It is one hundred feet long and twenty feet wide. In the center of the room is a pit ninety-eight feet long, four feet two inches wide and five feet deep which is used to provide access for painting the undersides of the vehicles. There is a permanent steel ladder at one end of the pit for entry and exit.

Normally, only two painters work on one shift. There are three shifts of duty when the plant is at full production. In addition, supervisors may be present. Painting is done mainly from mechanized personnel carriers that move along the top and sides of the vehicles. Only one vehicle is in the paintroom at a time. The carrier comes so close to the vehicle that a permanent railing would not be practical.

When the painting is completed, the vehicle is removed from the room via steel overhead

General Electric filed a Notice of Contest pursuant to 29 U.S.C. § 659(c). A hearing was held on June 3, 1974 before Administrative Law Judge William E. Brennan. At the hearing, ALJ Brennan granted the Secretary's motion to amend the citation to charge, in the alternative, non-serious violations of 29 C.F.R. § 1910.22(c) and 29 C.F.R. § 1910.23(a)(5).[4] ALJ Brennan found that none of the standards was applicable and that, if 29 C.F.R. § 1919.22(c) were applicable, General Electric had established that compliance with that standard "would diminish rather than enhance the safety of employees". This is referred to as the "greater hazard" defense.

The Secretary of Labor petitioned the Commission to review ALJ Brennan's order insofar as it vacated the citation for violation of § 1910.22(c). The Commission held that 29 C.F.R. § 1910.22(c) was applicable to the facts. The Commission refused to consider the "greater hazard" defense because General Electric had not sought a variance pursuant to § 6(d) of the Act, 29 U.S.C. § 655(d), and had not shown that resort to the variance procedure would be inappro-

priate. General Electric urges us to vacate the Commission's order because of the failure to consider the "greater hazard" defense.

■ The Commission has recognized that an enforcement action may be successfully defended by proving that compliance with a standard would result in a hazard to employees greater than that resulting from existing procedures. *See Secretary of Labor v. Industrial Steel Erectors, Inc.,* 1 BNA OSHC 1497 (1974). The Commission has stated, however, that the defense is a narrow one. Besides demonstrating that a greater hazard would result from compliance, the employer must also show that "alternative means of protecting employees are unavailable" and that "a variance application under section 6(d) of the Act would be inappropriate." *Secretary of Labor v. Russ Kaller, Inc., t/a Surfa Shield,* 4 BNA OSHC 1758, 1759 (1976); *Secretary of Labor v. Cornell & Company, Inc.,* 5 BNA OSHC 1018 (1977); *Secretary of Labor v. George A. Hormel Co.,* 2 BNA OSHC 1190 (1974).[5]

doors at either end of the room. The cleanup operation then begins. The two painters stand with their back to the walls and push masking paper, paint cans and other debris left from the painting job into the pit using brooms with five foot handles. The painters then enter the pit, push the debris into a pile and carry it away in boxes. The painting operation takes between twenty-four and sixty-four hours. The cleanup operation takes approximately an hour.

4. Although General Electric objected to the amendment at the hearing, it has not claimed in this appeal that it was prejudiced by the amendment.

5. General Electric has cited opinions by Administrative Law Judges which have not been reviewed by the Commission that apparently allow a "greater hazard" defense without proof of the inappropriateness of a variance application. *See, e. g., Secretary of Labor v. Henry R. Fell Co.,* 5 BNA OSHC 1992 (1977); *Secretary of Labor v. Kealey d.b.a. Modjeski and Masters,* 5 BNA OSHC 1986 (1977); *Secretary of Labor v. S. & H. Riggers & Erectors, Inc.,* 5 BNA OSHC 1930 (1977). General Electric, however, has cited on this point only two cases since *Hormel, supra,* decided by the Commission itself.

In *Secretary of Labor v. Otis Elevator Co.,* 5 BNA OSHC 1429 (1977) the standard on which

the citation was based was found inapplicable. The Commission also found that compliance with the standard would have made the work impossible. It is mentioned that Otis made a "greater hazard" argument, but the decision was clearly not made on the basis of that argument. In *Secretary of Labor v. Alberici-Koch-Laumand,* 5 BNA OSHC 1895 (1977), the Commission affirmed the Administrative Law Judge's vacation of a citation on two grounds. The standard in question, 29 C.F.R. § 1926.-105(a), required safety nets in certain workplaces where other protective devices are impractical. The Commission found use of safety nets as well as the other protective devices to be impossible. It was also found that a greater hazard defense was established. In footnote 5 of the opinion, it is mentioned that Chairman Cleary, one of the two Commissioners deciding the case, would allow the defense that compliance would preclude performance of required work "only if the employer has applied to the Secretary for a variance to permit the use of alternative means of protection, unless the possible alternative methods of protection are within the ambit of the standard." Although this reference to requiring a variance application does not appear to be in the context of the "greater hazard" defense, it is not completely clear. In sum, we are not convinced that the Commission has abandoned the requirement

General Electric has not applied for a variance. The Commission found "no indication that resort to the variance procedure would be inappropriate." General Electric now argues that the Secretary's conduct in pursuing this enforcement action demonstrates that a variance application would be futile and, therefore, inappropriate. We do not accept this argument. The Secretary's vigorous prosecution of this case indicates only that the Secretary is convinced that the standard in question has been violated. Whether the Secretary will grant a variance cannot be known until an application is made. A finding that an exception from the standard should be allowed would not be inconsistent with a finding that the standard has not been complied with. In his thoughtful opinion, ALJ Brennan emphasized that compliance with the standard in question would result in a greater danger to employees than that presented by current practices. General Electric presented both union and management witnesses whose testimony supported this conclusion. Thus, there is no reason to believe that a variance application would be futile or inappropriate.

General Electric argues that exclusion of the "greater hazard" defense under these circumstances is contrary to the purposes of the Act.[6] We conclude that the purposes of the Act are furthered by the Commission's decision.

There is no question that Congress' purpose in enacting the Act was "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources . . .." 29 U.S.C. § 651(b).

■ Every employer has the initial obligation to make sure that his working areas comply with all applicable standards. If there is reason to believe that compliance with certain standards may jeopardize his employees, a variance should be sought. If a "greater hazard" defense is allowed at an enforcement proceeding without requiring initial resort to the variance procedures or a showing that such resort would be inappropriate, there would be little incentive for an employer to seek a variance under these circumstances.

General Electric contends that an employer who correctly believes that his working conditions are safer than those prescribed in the standards should not be penalized for bypassing the variance procedures and taking his chances that he will not be cited or that he will prevail in an enforcement proceeding. The flaw in this argument is that some employers will believe *incorrectly* that their working conditions are safer than those prescribed in the standards. By removing this incentive to seek variances, the Commission would be allowing an employer to take chances not only with his money, but with the lives and limbs of his employees. This we cannot do.

■ The exclusion of the "greater hazard" defense at the enforcement proceeding does not force General Electric to implement procedures which increase the danger to its employees. Counsel for the Secretary made it clear to us at oral argument that General Electric can now apply for a variance.[7] Thus while we agree that no employee should be subjected to greater dangers because of an employer's failure to apply for a variance before a citation was issued, we rely on the Secretary's representation, through his counsel, that this will not be the result of our decision today. General Electric has been assessed a penalty of fifty-five dollars for its non-serious violation of 29 C.F.R. § 1910.22(c). Under

that the inappropriateness of an application for variance be shown before a "greater hazard" defense is allowed.

6. This issue was expressly reserved in *U.S. Steel v. O.S.H.R.C.*, 537 F.2d 780, 784 n. 4 (3d Cir. 1976).

7. Counsel for the Secretary stated. "I believe that indirectly [the Commission is] telling the employer that, go to the Secretary. You should have made your application before. You can still make it." Later, he reiterated this point: "[O]ur position is that the effect of the Commission's decision is, in effect, it tells the employer we believe that a variance application would still be appropriate."

29 U.S.C. § 666(d), employers who fail to correct violations for which citations have issued within the period prescribed by the Commission may suffer civil penalties of up to one thousand dollars for each day during which the violation continues. The Commission order specifies no time period within which General Electric must comply with the standard here. We assume that General Electric will be given sufficient time to apply for a variance and that no penalty will be imposed while the application, if filed, is being considered. We conclude that, since General Electric may now apply for a variance without incurring additional penalty, the exclusion of the "greater hazard" defense here was not error.

The Commission's order will, therefore, be affirmed. The petition for review will be denied.