Raymond J. DONOVAN, Secretary of Labor, Petitioner,

v.

DANIEL CONSTRUCTION CO., INC., and Occupational Safety and Health Review Commission, Respondents.

No. 82–1193.

United States Court of Appeals, First Circuit.

Argued Sept. 14, 1982.
Decided Nov. 17, 1982.

Andrea C. Casson, Atty., U.S. Dept. of Labor, Washington, D.C., with whom T. Timothy Ryan, Jr., Sol. of Labor, Frank A. White, Associate Sol. for Occupational Safety and Health, Dennis K. Kade, Washington, D.C., Counsel for Appellate Litigation, and Thomas L. Holzman, Washington, D.C., were on brief, for petitioner.

George A. Harper, Greenville, S.C., with whom Carl B. Carruth, and Thompson, Mann & Hutson, Greenville, S.C., were on brief, for respondent Daniel Const. Co.

Before DAVIS\*, CAMPBELL and BOWNES, Circuit Judges.

DAVIS, Circuit Judge.

The Occupational Safety and Health Commission decided that respondent Daniel Construction Company (Daniel) violated § 5(a)(2) of the Occupational Safety and Health Act, 29 U.S.C. § 654(a)(2) (1976), by failing to separate open wiring in an electrical receptacle from conducting materials. But the Commission also held, with one dissent, that no penalty would be assessed nor abatement required, as the violation was *de minimis*. The Secretary of Labor petitions for review of the holding that the violation was no more than *de minimis*. We affirm.

I.

Daniel, a South Carolina-based construction company, served as the general contractor for the erection of a paper mill in Rumford, Maine. In January 1980, two compliance officers from the Occupational Safety and Health Administration (OSHA) inspected the construction site. During this inspection, the officers discovered two sections of open wiring[1] running through an

---

\* Of the Federal Circuit, sitting by designation.

1. "Open wiring" is wiring which lacks an outer covering of insulation, rendering it more sus-

electrical receptacle, or junction box, that were mounted upon a wall at the site. One of the open wires was energized; both wires were in close proximity to a number of large metal brackets which were stacked against the wall underneath the junction box. The open wires actually contacted the metal clamps that affixed the junction box to the wall. Employees had access to the junction box area; it was not barricaded.

Following the inspection, Daniel received a "nonserious" citation for its failure to separate the open wiring from conducting materials, in violation of 29 U.S.C. § 654(a)(2) (1976) and 29 C.F.R. § 1926.-400(a) (1981).[2] OSHA assessed no penalty for the violation, but did demand prompt abatement of the defect. Daniel filed a timely notice of contest, and, after a hearing, an administrative law judge vacated the citation, concluding that Article 320–10 of the National Electrical Code was inapplicable in these circumstances.

On review at the Secretary's instance, the Commission reversed this administrative finding. *Daniel Construction Co.,* 10 O.S.H. Rep. (BNA) 1254 (1982). The Commission determined that the Secretary's evidence established Daniel's noncompliance with the relevant portion of the National Electrical Code by proving that there was direct contact between the open wiring and the junction box clamps.[3] Accordingly, the Commission affirmed this portion of the citation.[4] However, the Commission majority reduced the violation to a *de minimis* classification. In their view, the existence of the open wiring bore a negligible relationship to employee safety, so no penalty or abatement requirement was necessary. The dis-

senting commissioner believed that the open wiring violation necessitated abatement because it posed a greater than negligible relationship to employee safety; he concluded that the *de minimis* classification was inappropriate and that a nonserious citation should be issued.

## II.

■ The objective of the Occupational Safety and Health Act is to eliminate dangerous conditions in the workplace. *Cape & Vineyard Division v. Occupational Safety and Health Review Commission,* 512 F.2d 1148, 1150 (1st Cir.1975); *see* 29 U.S.C. § 651 (1976). To this end, the statute created OSHA within the Department of Labor, authorized the Department to impose regulatory standards (*see supra* n. 2) and established an independent review Commission to scrutinize OSHA's determinations of serious and nonserious violations. If judicial review is sought, the appellate court may not disturb the factual findings of the Commission as to the existence or severity of worksite violations if those findings are supported by substantial evidence in the record as a whole, even if the court could reach a different result *de novo.* *Modern Drop Forge Co. v. Secretary of Labor,* 683 F.2d 1105, 1109 (7th Cir.1982); *Cape & Vineyard Division, supra,* 512 F.2d at 1153; 29 U.S.C. § 660(a) (1976). The court must also accept reasonable factual inferences drawn by the Commission. *Modern Drop Forge, supra,* 683 F.2d at 1109; *Faultless Division v. Secretary of Labor,* 674 F.2d 1177, 1182 (7th Cir.1982).

■ The Act established three levels of violations—serious, nonserious, and *de min-*

---

ceptible to physical damage and the potential production of electrical shock.

**2.** 29 U.S.C. § 654(a)(2) (1976) requires employer compliance with OSHA regulatory standards. In turn, 29 C.F.R. § 1926.400(a) (1981) directs employers to conduct installation and use of electrical facilities in accordance with the National Electrical Code, NFPA 70–1971; ANSI CI–1971. Article 320–10 of the Code mandates that open wiring must be separated from conducting materials by a distance of at least two inches.

**3.** This conclusion accorded with the Secretary's evidence. The Commission did not accept opposing testimony by a Daniel employee that the open wiring was separated from conducting materials by more than two inches except where it was plugged into the junction box.

**4.** Daniel received citations for other violations of the Act. The administrative law judge and the Commission reviewed a number of these contested items in their decisions. Only the open wiring citation is before us, and then only in part.

*imis,* in decreasing order of severity. *See Brennan v. Butler Lime & Cement Co.,* 520 F.2d 1011, 1019 n. 10 (7th Cir.1975). A *de minimis* violation is one which bears "no direct or immediate relationship to safety or health." 29 U.S.C. § 658(a) (1976). Absent such a direct, immediate nexus between noncompliance and employee safety or health, a violation of an OSHA standard may be classified as *de minimis* rather than nonserious. *See LeeWay Motor Freight, Inc. v. Secretary of Labor,* 511 F.2d 864, 869 (10th Cir.1975). The consequence of a determination of *de minimis* is that, though a violation has occurred, abatement is unnecessary and no penalty is imposed.

■ This case, as it comes to us, centers on whether the violation found by the Commission was properly characterized by it as *de minimis* (in the face of Labor's position that the violation was sufficiently injurious to warrant abatement). There is no doubt (and it is agreed) that the Act gives the Commission authority, in appropriate cases, to reduce violations to the *de minimis* category. *See* 29 U.S.C. § 659(c) (1976), granting the Commission authority to "issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty or *directing other appropriate relief* * * * " (emphasis added). The sole issue is whether the Commission permissibly exercised that authority in this case.

### III.

The Secretary's position is that the Commission majority departed from the general guidelines laid down by the Secretary for characterizing violations as *de minimis,* and that the Commission was compelled by the structure of the Act to apply and defer to those guidelines. The parties have presented us with much argument *pro* and *con* on the latter part of the Secretary's contention, but we do not reach it because we think that the Commission did not deviate from the Secretary's guidelines but merely applied the same general ones to its differing appraisal of the particular acts.

The Secretary's guidelines for *de minimis* violations include a situation where "An employer complies with the clear intent of the standard, but deviates from its particular requirements in a manner which has no direct or immediate relationship to safety and health. These deviations may involve distance requirements, material requirements, the use of color, specifications and sign wording * * *." One example (given by the directive itself) of a *de minimis* violation concerns a published regulatory standard allowing 12 inches as the maximum distance between ladder rungs, but where the rungs are in fact 13 inches apart.

This guideline, together with its example, teaches that a plain violation of the literal terms of the standard can be *de minimis* because the departure's connection with safety and health is not "direct or immediate." In his brief the Secretary paraphrases the guideline as authorizing the *de minimis* category when there is "no evidence that health or safety [is] *more than remotely affected* by the violation." Brief for Petitioner at 22 (emphasis added). This terminology is not substantially different from that employed by the Commission which reasoned that *de minimis* treatment was apropos because the open wiring bore a "negligible relationship to employee safety" and "the possibility of injury was too remote and too speculative" to warrant a penalty or abatement. *Daniel Construction, supra,* 10 O.S.H.Rep. at 1260.

■ We fail to discern any real distinction between the definition of a *de minimis* violation promulgated by the Secretary and that used here by the Commission. The latter did not depart from the statutory standard—"no direct or immediate relationship to safety or health." It merely couched its determination in language somewhat different from that used by the Secretary in his guidelines, but without any difference in meaning. In other words, the Commission could properly decide that *de minimis* treatment of an OSHA violation is acceptable if there is a very attenuated relationship between the existence of the violation and the health and safety of the

employees at the worksite. The actual language used—"no direct and immediate relationship," a "remote relationship," or a "negligible relationship"—is not important if substantial evidence supports the factual findings of the Commission as to the lack of nexus between the violation and employee safety or health.[5]

## IV.

The Commission's ultimate findings in this case are sustainable even though it differed from the Secretary in evaluating the remoteness of the relationship to safety. The Commission emphasized three reasons for its *de minimis* classification. First, it found no evidence that the wire was damaged; the record shows that this finding was correct. Next, the Commission explained that the potential danger of electrical shock posed by the open wiring was minimized because Daniel employees had placed the open wires behind the junction box clamps. The photographic exhibits demonstrate that the Commission was correct as to the placement of the wires. Testimony indicated that the only manner in which the open wiring could cause employee injury would be if an employee were to crush the wiring against a conductor. Common sense could indicate, though, that the open wiring was only minimally and remotely open to such damage because it was tucked behind the junction box, out of range of those employees engaged in storing metal brackets or carrying pipes. The Commission can base its conclusions upon its view of common sense if the facts so warrant. *See Carlyle Compressor Co. v. Occupational Safety and Health Commission,* 683 F.2d 673, 677 n. 9 (2d Cir.1982). Like the ladder-rung example given in the Secretary's own guidelines, *supra,* the Commission could decide that in the present circumstances the deviation increased the risk of injury so slightly that it could not be considered direct or immediate.[6]

The Commission also said that circuit breakers protected the wires, thus reducing the potential of electric shock and resultant employee injury. This finding, by itself, would be insufficient to justify a *de minimis* conclusion. As the Secretary notes, a circuit breaker provides little or no protection from the danger posed by energized open wiring. Nonetheless, the precise placement of the open wiring here, coupled with its undamaged condition, could be found to make the violation remote and negligible in terms of its potential for employee injury. From this evidence, the Commission reasonably could infer that an indirect and nonimmediate relationship existed between the violation and employee safety or health.

For these reasons, the decision of the Occupational Safety and Health Commission is

*Affirmed.*

---

5. Petitioner appears to argue that the Commission trenched on the Secretary's power to establish regulatory safety standards by weighing for itself the likelihood of hazard embodied in the standard. In our view, the Commission did no such thing but simply inquired whether the possibility of injury in this particular instance was minimal, remote, and negligible. That is a proper question for the Commission under the Secretary's own guidelines for a *de minimis* classification.

6. Although one of the compliance officers testified that an employee storing metal brackets or carrying heavy pipes could crush the wires against the junction box or its clamps and receive an electrical shock, he did not indicate whether this possibility was negligible and remote or a direct and immediate threat to the safety or health of Daniel employees. Given the location of the wiring, this omission in the testimony may have proved to be the critical gap in the Secretary's case.