998 F.2d 134
 62 USLW 2012, 26 Fed.R.Serv.3d 169,
16 O.S.H. Cas. (BNA) 1241,
1993 O.S.H.D. (CCH) P 30,093
 Robert REICH,* Secretary of Labor, United
States Department of Labor, Petitioner in No. 92-3297,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION
and
Erie Coke Corporation, Respondents,
ERIE COKE CORPORATION, Petitioner in No. 92-3313,
v.
Robert REICH,* Secretary of Labor,
United States Department of Labor, Occupational
Safety and Health Review Commission, Respondents.
 Nos. 92-3297 & 92-3313.
 United States Court of Appeals,
Third Circuit.
 Argued March 8, 1993.
Decided June 17, 1993.
 
 Charles F. James, (argued), Marshall J. Breger, Sol. of Labor, Donald G. Shalhoub, Acting Associate Sol. for Occupational Safety and Health Ann Rosenthal, for Appellate Litigation U.S. Dept. of Labor, Washington, DC, for Secretary of Labor.
 Eric D. Paulsrud, (argued), John J. Gazzoli, Jr., Lewis, Rice & Fingersh, St. Louis, MO, for Erie Coke Corp.
 Before: BECKER, GREENBERG, and WEIS, Circuit Judges
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 In this proceeding seeking review of an order by the Occupational Safety and Health Review Commission, we determine that a cross-petition filed in this Court more than sixty days after the date of the order is time barred. We also reject the Secretary of Labor's contention that the Commission lacks authority to reduce an other-than-serious violation to one of a de minimis level. We therefore will dismiss the cross-petition and deny review of the Secretary's petition.
 
 
 2
 After Erie Coke Company refused to include a provision in a collective bargaining agreement requiring payment for employees' protective gloves, the United Steelworkers filed a complaint with the Occupational Safety and Health Administration. The union alleged that the company's policy required its employees to pay for the flame resistant gloves needed for work at the coke oven batteries. After investigating the complaint, the Secretary issued a citation directing that the practice be abated, but did not seek assessment of a penalty.
 
 
 3
 Following a hearing, an ALJ found that the company had violated 29 C.F.R. § 1910.1029(h)(1)(ii) which states that an employer "shall provide and assure the use of appropriate protective clothing ... such as ... [f]lame resistant gloves." The ALJ affirmed the citation and the Occupational Safety and Health Review Commission granted discretionary review.
 
 
 4
 The Commission affirmed the finding of a violation, but reduced the level of the offense to de minimis status. In its opinion, the Commission noted that the Secretary had directed OSHA field staff to read the pertinent standard as meaning "the clothing provision and cleaning service are obligations of the employer at no cost to the employee." OSHA Instruction STD 1-6.4(c)(1). The Commission treated this instruction as the Secretary's interpretation of the regulation and applying the test of reasonableness set out in Martin v. OSHRC, 499 U.S. 144, 154-56, 111 S.Ct. 1171, 1178-80, 113 L.Ed.2d 117 (1991), deferred to that construction.
 
 
 5
 The Commission rejected Erie's assertions that the Secretary should be estopped from enforcing the standard based on previous inconsistent actions and that, in any event, requiring employees to pay for the gloves prevented wasteful use for non-work or unnecessary purposes.
 
 
 6
 Concluding that Erie had failed to comply with the terms of the regulation, the Commission determined, nevertheless, that the violation should be characterized as de minimis rather than other-than-serious. The Commission, finding that Erie's employees had not suffered any safety impairment because they had paid for the gloves, determined the infraction to be de minimis.
 
 
 7
 Fifty-nine days after the issuance of the Commission's order, the Secretary filed a petition for review protesting the reduction of the offense level. Eight days later, Erie filed a separate petition for cross-review of the order seeking to reverse the Commission's finding that Erie had violated the regulation.
 
 I.
 
 8
 In order to define the scope of the issues properly brought before us, we must first consider whether Erie's cross-petition was timely filed. Judicial review of the Commission's rulings are authorized by 29 U.S.C. § 660(a) which states, in part, that "[a]ny person adversely affected or aggrieved on an order of the Commission" may file a petition with an appropriate court of appeals "within sixty days following the issuance of such order." The Secretary of Labor has a similar time limit within which to apply for review. 29 U.S.C. § 660(b).
 
 
 9
 Because Erie filed its cross-petition more than sixty days after the Commission's order issued, the question is whether this Court lacks a statutory power of review. We note that the timely filing of an initial petition is a mandatory and jurisdictional requirement. See Browder v. Director, Dep't of Corrections, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978). In this case, we must decide whether, as applied to a cross-petition, the sixty-day filing period of Section 660(a) of OSHA is also mandatory and jurisdictional.
 
 
 10
 This Court considered whether statutory filing periods apply to cross-appeals in United States v. Tabor Court Realty Corp., 943 F.2d 335, 342 (3d Cir.1991). We concluded that, if the initial notice of appeal meets the jurisdictional time limit, whether a cross-appeal is subject to the same limit is not a question of mandatory jurisdiction, but a rule of practice. As such, the filing requirements for cross-appeals "may be waived in the interest of justice under appropriate circumstances." Id. at 343. See also the discussion in Young Radiator Co. v. Celotex Corp., 881 F.2d 1408, 1415 (7th Cir.1989).
 
 
 11
 In Tabor Court, we pointed out that Rule 4(a)(3) of the Federal Rules of Appellate Procedure grants additional time for filing cross-appeals in most cases. Once a court has jurisdiction over an appeal, an appellee may file a cross-appeal even after the time for taking the original appeal has run. In some instances, in order to fully adjudicate a controversy on appeal, a court will consider a cross-appeal despite the fact that a notice of cross-appeal was never filed. Tabor Court, 943 F.2d at 344.
 
 
 12
 However, Appellate Rule 4(a)(3) does not validate Erie's untimely cross-petition. As a general principle, an appellee who has not filed a timely cross-appeal may not "attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." Id. at 342 (citations omitted); cf. Bacon v. Sullivan, 969 F.2d 1517, 1522 (3d Cir.1992). In the case here, Erie is not simply asserting another ground for affirmance, but rather seeks to set aside the finding of a violation altogether.
 
 
 13
 More importantly, Rule 20 specifically provides that Rules 3-14 are not applicable to appeals from administrative agency orders. Fed.R.App.P. 20. The result is that the fourteen-day extension permitted for filing cross-appeals under Appellate Rule 4(a)(3) is not available in proceedings to review agency rulings. That being so, a cross-petition is restricted to the same sixty-day period applicable to the initial petition.
 
 
 14
 On facts indistinguishable from the ones at hand, the Court in Dole v. Briggs Construction Co., 942 F.2d 318, 320 (6th Cir.1991), held it was unable to consider a cross-petition filed seven days after the sixty-day filing period set by 29 U.S.C. § 660(a). See also Seafarers Int'l Union v. NLRB, 895 F.2d 385, 387 (7th Cir.1990). Hence, because Appellate Rule 4(a)(3) does not extend the filing time for review of administrative agency orders, Erie's cross-petition must be dismissed.
 
 
 15
 The inapplicability of Appellate Rule 4(a)(3) has undesirable side effects. After weighing the relative benefits and detriments of an agency decision, a party may well decide that further litigation is not worthwhile because the adverse aspects of the decision do not outweigh the good--at least to any appreciable degree. Consequently, that party will choose not to ask for appellate review. However, if its adversary files a petition for review, the situation changes and poses a risk that the favorable aspects of the agency action may be eliminated by the appeal. At that point, sound strategy would dictate filing a cross-petition that would seek to eliminate the unfavorable aspects of the administrative decision. If, however, the adversary has waited until the last minute and there is no longer time for filing a cross-petition, the other party has been "sandbagged," whether inadvertently or otherwise. The only defense against such a scenario is the filing of a protective petition for review. That tactic should not be encouraged because it is inefficient and may, in fact, lead to appeals that otherwise would not have been taken.
 
 
 16
 In short, failing to provide in agency proceedings for a cross-appeal procedure like that in Appellate Rule 4(a)(3) leads to wasteful and nonproductive litigation. We would welcome an examination of this problem and possible resolution by the Advisory Committee on Appellate Rules.
 
 II.
 
 17
 We come then to the sole remaining issue in this appeal--the Secretary's contention that the Commission was barred from reducing the offense from other-than-serious to de minimis.[1] The difference between the two levels is that an other-than-serious designation requires abatement of the violation and a de minimis classification does not.
 
 
 18
 In Martin, 499 U.S. at 150, 111 S.Ct. at 1174, the Supreme Court reviewed the interplay between the roles allocated the Secretary of Labor and the Commission. Unlike most regulatory schemes, OSHA separates enforcement and rulemaking powers from adjudicatory functions. The Secretary is charged with the responsibility for setting and enforcing workplace safety standards. He is empowered to issue authoritative interpretations of the statute and "has the sole authority to determine whether to prosecute a violation of the Act." Cuyahoga Valley Ry. v. United Transp. Union, 474 U.S. 3, 5, 106 S.Ct. 286, 287, 88 L.Ed.2d 2 (1985).
 
 
 19
 The Commission, on the other hand, is assigned to carry out adjudicatory duties. If a party contests a citation, the Commission, after a hearing, issues an order "based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief." 29 U.S.C. § 659(c). In performing its tasks, the Commission reviews the Secretary's interpretation only for reasonableness and consistency with statutory and regulatory language. Stated simplistically, the Secretary is entrusted with the enforcement and interpretation of law and the Commission with making findings of fact.
 
 
 20
 Citing Martin, the Commission in this case reviewed and deferred to the Secretary's interpretation of the regulation in section 1910.1029(h)(1)(ii). The Commission thus agreed with the Secretary's position that the word "provide" in the regulation requires an employer to not only furnish its employees with protective gloves, but to pay for them as well.
 
 
 21
 In determining the appropriate classification of Erie's violation, the Commission noted that 29 U.S.C. § 658(a) refers to "de minimis" violations as those that "have no direct or immediate relationship to safety or health." The Commission found that the Secretary had not introduced any evidence to show that Erie's employees had suffered any direct impairment of safety or health as a result of having had to pay for the gloves. The facts in the record did not establish that "employees were wearing torn or otherwise ineffective gloves beyond their useful life in order to save money, thereby exposing their hands to possible burns and coke oven emissions." On those uncontroverted facts, the Commission found the violation was de minimis.
 
 
 22
 Over the years, the courts and the Commission have read the Act as classifying violations into three categories: serious, non-serious, and de minimis. See Phoenix Roofing, Inc. v. Dole, 874 F.2d 1027, 1031 (5th Cir.1989); Fluor Constructors, Inc. v. Occupational Safety & Health Comm'n, 861 F.2d 936, 942 (6th Cir.1988); Donovan v. Daniel Construction Co., 692 F.2d 818, 820-21 (1st Cir.1982); Brennan v. Butler Lime & Cement Co., 520 F.2d 1011, 1019 n. 10 (7th Cir.1975); Brennan v. Occupational Safety & Health Review Comm'n, 494 F.2d 460, 463 (8th Cir.1974). Apparently, until the advent of the case at hand, the Secretary acquiesced in that classification. Now, however, despite that twenty-year history, he views the de minimis status as merely a preliminary charging decision over which the Commission has no authority.
 
 
 23
 The Secretary contends that by lowering the offense to a de minimis level and, thus, not requiring abatement, the Commission usurped his authority to enforce the applicable standard. In addition, he maintains that by eschewing abatement, the Commission has, in effect, granted an exception to a valid regulatory requirement. Moreover, he asserts that in order to avoid a regulatory requirement, an employer must apply for a variance. Finally, the Secretary contends that Erie failed to assert the de minimis standard as an affirmative defense.
 
 
 24
 The precise issue of the Commission's authority to characterize an offense as de minimis was decided by the Court of Appeals for the First Circuit in Donovan v. Daniel Construction Co., 692 F.2d 818 (1st Cir.1982). After reviewing the functions of the Commission, the Court held that "[t]here is no doubt (and it is agreed) that the Act gives the Commission authority, in appropriate cases, to reduce violations to the de minimis category." Id. at 821. The Court went on to say that "the Commission could properly decide that de minimis treatment of an OSHA violation is acceptable if there is a very attenuated relationship between the existence of the violation and the health and safety of the employees." Id. at 821-22; see also Phoenix Roofing, 874 F.2d at 1032 (In absence of a ruling by the Commission, Court of Appeals reduced offense to de minimis classification, finding it required as a matter of law).
 
 
 25
 The Daniel court also rejected the argument that the Commission had trenched on the Secretary's power to weigh the likelihood of hazard embodied in the standard. The Court found that the Commission "did no such thing but simply inquired whether the possibility of injury in this particular instance was minimal, remote, and negligible." Id. at 822 n. 5.
 
 
 26
 Daniel is directly on point and persuasive. Accepting the Secretary's position would create an undesirable intercircuit conflict. The Secretary cites no change in the statute or Supreme Court interpretation that would justify us departing from the Court of Appeals' straightforward statutory construction. Indeed, the Secretary notes in his brief that, in Daniel, his predecessor conceded that the Commission had power to classify certain violations as de minimis.[2]
 
 
 27
 We do note that Congress amended OSHA in 1990. Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101-508, 1990 U.S.C.C.A.N. (104 Stat. 1388) 2017. After conducting a series of oversight hearings, Congress increased the penalties that could be assessed under the Act. It is significant, we think, that the Secretary did not take that opportunity to have Congress remove the Commission's authority to reduce offenses to a de minimis level.
 
 
 28
 In Martin, the Supreme Court referred to the Commission's role as a "neutral arbiter" and said "Congress expressly charged the Commission with making authoritative findings of fact and with applying the Secretary's standards to those facts in making a decision." 499 U.S. at 154, 111 S.Ct. at 1178. That is what occurred in this case. The Commission made a specific finding of fact that the safety of Erie's employees was not jeopardized by the company's failure to pay for protective gloves. We conclude that the Commission's finding is supported by substantial evidence.
 
 
 29
 The Commission has the statutory authority to affirm, modify, or vacate the Secretary's citation, or to direct other appropriate relief. Its action in reducing the violation to de minimis status clearly falls within that grant of power. The reduction of the offense level is analogous to the power of a court to reduce a criminal offense to a lesser level than the one charged in an indictment. That traditional procedure has not been considered to be a usurpation of prosecutorial discretion, but rather a necessary prerogative of the court. Moreover, the Secretary does not challenge the Commission's authority to reduce a serious violation to non-serious status. Thus, it appears that it is not the Commission that is seeking to enhance its authority, but the Secretary who is attempting to enlarge his power at the expense of the "neutral arbiter."
 
 
 30
 We need not elaborate on Daniel, although further arguments could be recited to sustain its holding and refute the Secretary's arguments. Here, we are content to rely on the well-reasoned opinion and holding of the Court of Appeals for the First Circuit.
 
 
 31
 We also find no support in the regulations requiring a party to plead de minimis as an affirmative defense and reject the Secretary's procedural challenge on that point.
 
 
 32
 Accordingly, the Secretary's petition for review will be denied and Erie's petition for cross-review will be dismissed.
 
 
 33
 BECKER, Circuit Judge, concurring and dissenting.
 
 
 34
 I share the majority's concern about the Secretary's change in legal position on this issue after having conceded, for almost twenty years, that the Commission had the authority to reclassify violations as de minimis. Nevertheless, it is clear that an agency may, in appropriate circumstances, alter its previous interpretation of a statute. See Rust v. Sullivan, --- U.S. ----, ----, 111 S.Ct. 1759, 1769, 114 L.Ed.2d 233 (1991); International Assoc. of Bridge, Structural and Ornamental Iron Workers, Local 3 v. NLRB, 843 F.2d 770, 776-77, 779 (3d Cir.), cert. denied, 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988). And in the present case, I believe that recent changes in the legal landscape satisfactorily explain the Secretary's altered position. See Martin v. Occupational Safety and Health Review Comm'n, 499 U.S. 144, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (hereinafter "CF & I ") (a reviewing court must defer to the Secretary's, rather than the Commission's, reasonable interpretation of an ambiguous regulation because the Secretary's legislative and enforcement roles leave her better positioned to reconstruct the purpose of the regulation and to assess its effects); Cuyahoga Valley Ry. Co. v. United Transp. Union, 474 U.S. 3, 106 S.Ct. 286, 88 L.Ed.2d 2 (1985) (the Secretary's decision to withdraw a citation may not be reviewed by the Commission).
 
 
 35
 I also believe, based on both the specific provisions of the Occupational Safety and Health Act ("OSHA" or "the Act") and its general structure, that the Secretary's new position is legally correct. First, as I read the Act, § 658(a) explicitly gives the Secretary the discretion either to issue a citation or a notice in lieu of a citation regarding de minimis violations that do not directly or immediately impact employees' safety or health. 29 U.S.C. § 658(a) (1988). In my view, this decision is part of the Secretary's unreviewable prosecutorial (charging) discretion.
 
 
 36
 Second, I agree with the Secretary that the traditional view that the Act establishes three levels of severity for adjudicating violations--(1) serious, (2) not serious, and (3) de minimis[1]--is mistaken. Rather, as I read it, the Act establishes only two severity levels for adjudicatory purposes--serious and not serious. The de minimis determination is not a third severity level, but a preliminary charging determination committed to the prosecutorial discretion of the Secretary, who may under 29 U.S.C. § 658(a) decide to issue either a citation or a de minimis notice for a certain subset of not serious violations; i.e., those de minimis violations that do not have a direct or immediate impact on employee health or safety.
 
 
 37
 Third, I also agree with the Secretary that the Commission's broad grant of adjudicatory authority to "direct[] other appropriate relief," 29 U.S.C. § 659(c) (1988), does not necessarily include the power to reclassify a violation as de minimis. It is unclear to me why such relief is either appropriate or necessary to the Commission's performance of its general adjudicatory functions.
 
 
 38
 Finally, I believe the Secretary's argument is correct in terms of the division of administrative functions established by OSHA. If the Commission has the authority to reclassify a violation as de minimis, it effectively has the power to review and overrule the Secretary's original decision to issue a citation rather than a de minimis notice. The choice between a de minimis notice and a citation, however, involves both policymaking and prosecutorial decisions, functions that the Act delegates exclusively to the Secretary. I therefore disagree with the majority's view that the Commission has the authority to reclassify a violation as de minimis.[2]
 
 I.
 
 39
 I begin my analysis with the language of § 658(a):
 
 
 40
 If, upon inspection or investigation, the Secretary or his authorized representative believes that an employer has violated a [valid OSHA standard or regulation], he shall with reasonable promptness issue a citation to the employer. Each citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the chapter, standard, rule, regulation, or order alleged to have been violated. In addition, the citation shall fix a reasonable time for the abatement of the violation. The Secretary may prescribe procedures for the issuance of a notice in lieu of a citation with respect to de minimis violations which have no direct or immediate relationship to safety or health.
 
 
 41
 29 U.S.C. § 658(a). As I read this language, the decision whether to issue a citation or a notice in lieu of a citation for a de minimis violation is explicitly committed to the discretion of the Secretary.
 
 
 42
 The section, purposefully I believe, draws a distinction between the Secretary's discretionary authority (what the Secretary "may" do) and his mandatory authority (what the Secretary "shall" do). With one exception, the Secretary is required to issue a citation and to provide for abatement any time he discovers a violation. The one exception is that the Secretary may, in his discretion, prescribe procedures for issuing a notice instead of a citation for violations that are de minimis and bear "no direct or immediate relationship to safety or health." Id.
 
 
 43
 If the Secretary chooses to exercise this discretion, a citation will not be issued. Instead, the Secretary will issue a notice "in lieu of a citation." Id. The distinction is meaningful because, as discussed infra, a de minimis notice has none of the legal effects of a citation--most importantly, it cannot be a mechanism for forcing abatement. Thus, § 658(a) grants to the Secretary the initial charging discretion either to subject an employer to the legal ramifications of a citation or, instead, to issue what amounts to a warning through a de minimis notice. This initial charging decision is a classic example of the prosecutorial discretion committed to the Secretary under OSHA's divided administrative responsibilities.
 
 
 44
 In Cuyahoga Valley Ry. Co. v. United Transp. Union, 474 U.S. 3, 106 S.Ct. 286, 88 L.Ed.2d 2 (1985), the Supreme Court held that under OSHA's division of administrative functions the Secretary had the unreviewable discretion to withdraw a previously issued citation. The Court reasoned:
 
 
 45
 It is the Secretary, not the Commission, who sets the substantive standards for the work place, and only the Secretary has the authority to determine if a citation should be issued to an employer for unsafe working conditions, 29 U.S.C. § 658. A necessary adjunct of that power is the authority to withdraw a citation and enter into settlement discussions with the employer.
 
 
 46
 Id. at 6, 106 S.Ct. at 288.[3] It seems axiomatic that if "the Secretary has the [unreviewable] authority to determine if a citation should be issued to an employer," even when the terms of the Act make the issuance of citation mandatory, as they do for non-de minimis violations, then the decision to issue a citation for a de minimis violation, which the Act specifically makes discretionary, must also be unreviewable. Both decisions fall squarely within the heart of the Secretary's prosecutorial function.
 
 II.
 
 47
 Traditionally, the Commission has been viewed as having the adjudicatory authority to determine into which of three severity levels a violation falls--serious, not serious, or de minimis.[4] Based on the structure of the Act, however, I do not believe that Congress intended to establish three levels of severity.
 
 
 48
 The Act's only reference to a de minimis violation, and the reference on which the traditional view relies, is found in § 658(a), a provision that by its terms is concerned solely with the Secretary's prosecutorial charging decisions. In contrast, the definitions for serious and not serious violations are located in § 666, a provision that governs the assessment of civil and criminal penalties and which explicitly provides a role for the Commission in assessing those penalties. 29 U.S.C. § 666 (1988 & 1991 Supp.).[5] From a purely structural standpoint, it seems unlikely that if Congress had intended to establish three severity levels it would have established them in completely separate sections, sections that are dissimilar in terms of both their location within the Act and their subject matter. Moreover, it seems unlikely that Congress would place a definition for one of the primary issues in adjudication in a section which, in all other aspects, concerns only conduct by the Secretary that is wholly unreviewable, see Cuyahoga, 474 U.S. 3, 106 S.Ct. 286, 88 L.Ed.2d 2 (1985). From these structural factors, I conclude that Congress never intended de minimis to serve as a level of severity for purposes of adjudication. Rather, as I read the Act, it establishes only two severity levels for a cited violation: (1) "serious violation" and (2) "violation determined not serious." See 29 U.S.C. §§ 666(b) & (c).
 
 
 49
 The conclusion that Congress intended only two severity levels for adjudicatory purposes is, I believe, further supported by the language of § 666. While § 666 specifically defines what constitutes a serious violation,[6] there is no separate definition for what constitutes a not serious violation. By implication, not serious violations are therefore the set of all violations that do not fit within the definition of a serious violation; i.e., they are, as their name implies, all of those violations that are not serious.
 
 
 50
 In sum, as I read the Act, de minimis violations are a subset of not serious violations. With regard to this subset, the Secretary has the discretion to issue a citation or merely to issue a notice in lieu of a citation. If the Secretary chooses to issue a citation, however, these violations become, for adjudicatory purposes, indistinguishable from not serious violations. Such a conclusion, I believe, is compelled by the language and the structure of the Act, for a contrary holding would effectively eliminate the Secretary's ability to effectuate his initial prosecutorial decision.
 
 
 51
 If the Secretary is to have the discretion under § 658(a) to choose between issuing a citation or a notice for the same technical violation, a result that I believe is compelled by the plain language of § 658(a), then, in order for that decision to be efficacious, the violation on which the Secretary has decided to issue a citation must be treated as a citation and not converted into a de minimis notice by the Commission. To hold otherwise would allow the Commission effectively to review the Secretary's original decision to issue a citation rather than a de minimis notice, a result that I believe is barred by the reasoning in Cuyahoga, 474 U.S. 3, 106 S.Ct. 286, 88 L.Ed.2d 2 (1985). Accordingly, when, as in the present case, the Commission concludes that a violation has occurred, I would hold that it may not convert the Secretary's decision to issue a citation on that violation into a legal nullity by reclassifying it as de minimis.
 
 III.
 
 52
 Erie Coke also proffers, and the majority appears to adopt, the argument that the broad delegation of remedial powers to the Commission in § 659(c) necessarily includes the authority to reclassify a violation as de minimis. Subsection (c) provides, in relevant part, that "[t]he Commission shall thereafter issue an order based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief...." 29 U.S.C. § 659(c). Erie Coke understandably has not argued that reclassifying a violation as de minimis amounts to the affirmance, modification, or vacatur of a citation. Since the reclassification eliminates the legal ramifications of a citation, it cannot be argued that it is an affirmance or modification. Nor is it a vacatur of the citation since the Commission specifically affirms the existence of a violation.
 
 
 53
 Accordingly, the Commission's actions, if they are authorized, must be authorized by its general grant of residual remedial power, namely, the ability to direct "other appropriate relief." But the argument that "other appropriate relief" necessarily includes the power to reclassify a violation as de minimis, without further elaboration, seems conclusory. In its submission, Erie Coke never explains why the Commission must have the power to reclassify a violation as de minimis or why reclassifying a violation as de minimis is "appropriate relief" within the language and structure of the Act.
 
 
 54
 At best, Erie Coke seems to argue that determining the severity level of the violation is a necessary part of the Commission's adjudicatory function. While I do not believe that it necessarily follows that the Commission must have the power to determine the severity of the violation, I agree that OSHA in fact does give that authority to the Commission.[7] As discussed above, however, as I read the Act it creates only two levels of severity for purposes of adjudication--(1) those violations that meet the definition of a serious violation and (2) all other violations that do not meet the definition of a serious violation and are therefore classified as not serious.
 
 
 55
 In sum, I can think of no structural or policy reason why the Commission must have the power, as part of determining the severity level of the violation, to conclude that, although a violation has occurred, it is not important enough to require abatement. As intimated above and discussed more fully below, that determination would seem to be a policy decision for which the Secretary, not the Commission, is responsible.
 
 IV.
 
 56
 Finally, the Secretary's position is supported by the overall structure of the Act. First, it is important to recognize that reclassifying the violation as de minimis is, in its practical and legal effects, tantamount to finding that there has been no violation. While a de minimis finding technically affirms the existence of a violation, the effect of the reclassification is to eviscerate the Secretary's ability to enforce the underlying regulation. Indeed, because a de minimis notice is not a citation, it can neither be accompanied by a penalty (a fine) nor be the basis for forcing the employer to abate the violation. Super Excavators, Inc., 1991 WL 218314, at * 3 (OSHRC Oct. 18, 1991) (Docket No. 89-2253). Moreover, a de minimis notice "does not become part of an employer's history of previous violations." Id. Therefore, it cannot serve as the basis for a finding of willful or repeated violations under 29 U.S.C. § 666(a); nor can it be considered in judging the appropriateness of future civil penalties under 29 U.S.C. § 666(j). See Super Excavators, 1991 WL 218314, at * 3.[8]
 
 
 57
 Second, since reclassifying a violation as de minimis effectively eliminates the Secretary's ability to force compliance with the regulation, allowing such a procedure seems contrary to both the employer's general obligation to comply with the regulation and OSHA's scheme for seeking a variance. An employer, at least in the first instance, has an unequivocal obligation to "comply with occupational safety and health standards promulgated under this chapter." 29 U.S.C. § 654(a)(2) (1988). While an employer may seek a variance from the Secretary, see 29 U.S.C. § 655(d) (1988), and may assert certain affirmative defenses for noncompliance before the Commission, see 29 C.F.R. § 2200.36 (1992), the initial presumption and obligation to comply remains. Thus, in General Electric Co. v. Secretary of Labor, 576 F.2d 558 (3d Cir.1978), we held that an employer could not assert the affirmative defense of "greater hazard" without first having sought a variance from the Secretary or showing that it would have been inappropriate to do so. Id. at 561. As we explained, by eliminating the incentive to seek a variance, we would be creating a risk that "some employers will believe incorrectly that their working conditions are safer than those prescribed in the standards [and we would be] allowing an employer to take chances not only with his money, but with the lives and limbs of his employees." Id. (emphasis in original). In so holding, we affirmed that the purpose of the Act is to protect the health and safety of employees and that the Secretary was presumptively in the best position to evaluate the means by which to achieve this purpose.
 
 
 58
 This conclusion, I believe, is equally applicable as between the Secretary and the Commission. The Supreme Court's holding in CF & I that deference should be given to the Secretary's interpretation of a regulation over that of the Commission was based primarily on an evaluation of the Secretary's role and position within the division of powers created by OSHA. CF & I, 499 U.S. at 152-56, 111 S.Ct. at 1176-79. As the Court explained:
 
 
 59
 The Secretary enjoys readily identifiable structural advantages over the Commission in rendering authoritative interpretations of OSH Act regulations. Because the Secretary promulgates these standards, the Secretary is in a better position than is the Commission to reconstruct the purpose of the regulations in question. Moreover, by virtue of the Secretary's statutory role as enforcer, the Secretary comes into contact with a much greater number of regulatory problems than does the Commission, which encounters only those regulatory episodes resulting in contested citations. Consequently, the Secretary is more likely to develop the expertise relevant to assessing the effect of a particular regulatory interpretation.
 
 
 60
 Id. at 152-53, 111 S.Ct. at 1176-77 (citation omitted).
 
 
 61
 The same structural advantages exist here. Because the Secretary is charged with responsibility for promulgating and interpreting the regulations, and because of the Secretary's greater contact with the problems caused by noncompliance through his enforcement responsibilities, the Secretary is better positioned to understand the safety issues involved with noncompliance and to evaluate the need for enforcement. The Secretary, in turn, effectuates these fundamental policy decisions through the exercise of his prosecutorial discretion.
 
 
 62
 If the Secretary decides to issue a citation rather than a de minimis notice, he must, perforce, have concluded that the health and safety considerations at issue warrant the enforcement of the regulation.[9] In reclassifying a violation as de minimis, the Commission invades and overrides these prosecutorial and policymaking functions, which are reserved to the Secretary under the structure of the Act. See CF & I, 499 U.S. at 154, 111 S.Ct. at 1178 ("Insofar as Congress did not invest the Commission with the power to make law or policy by other means, we cannot infer that Congress expected the Commission to use its adjudicatory power to play a policymaking role." (emphasis in original)); Cuyahoga, 474 U.S. at 6, 106 S.Ct. at 288 ("It is apparent that the Court of Appeals' decision is inconsistent with the detailed statutory scheme which contemplates that the rights created by the Act are to be protected by the Secretary. It is also clear that enforcement of the Act is the sole responsibility of the Secretary."); see also CF & I, 499 U.S. at 153, 111 S.Ct. at 1177 ("The Senate Committee Report explained that combining legislative and enforcement powers in the Secretary would result in 'a sounder program' because it would make a single administrative actor responsible both for 'formulat[ing] rules ... and for seeing that they are workable and effective in their day-to-day application,' and would allow Congress to hold a single administrative actor politically 'accountable for the overall implementation of that program.' " (quoting S.Rep. No. 91-1282, 91st Cong., 2d Sess. 8 (1970), reprinted in 1970 U.S.C.C.A.N. 5177, 5184-85)).
 
 
 63
 In sum, by reclassifying a citation as de minimis, the Commission eviscerates the Secretary's ability to force an employer to comply with validly issued regulations and thereby effectively substitutes its judgment for the Secretary's as to the need to enforce that standard.[10]
 
 
 64
 For the reasons discussed above, I respectfully dissent.
 
 
 
 *
 Mr. Reich was substituted for Lynn Martin as the named party pursuant to Rule 43(c)(1) of the Federal Rules of Appellate Procedure
 
 
 [1]
 At oral argument, Erie's counsel informed this Court that, in a new collective bargaining agreement signed after the petition for review was filed, Erie has assumed the obligation to pay for flame resistant gloves. Erie, however, considers the matter open for negotiation in future contract discussions. In these circumstances, we do not consider the case to be moot. United States v. W.T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953) (voluntary cessation of allegedly illegal conduct does not make a case moot)
 The fact that the Commission agreed that a violation existed apparently did affect the collective bargaining process. It is unrealistic, therefore, to accept the Secretary's argument that a de minimis finding has no consequences.
 
 
 [2]
 The government should be extremely chary of fomenting intercircuit conflicts with the accompanying uncertainty and lack of coherence in the law. If an agency believes that a Court of Appeals has made a serious error, the Supreme Court or Congress is available to correct the mistake. It is difficult to believe that after living with the Daniel decision for twenty years, the Department of Labor can now find that it poses a threat to the efficient and orderly implementation of OSHA
 
 
 [1]
 See, e.g., Fluor Constructors, Inc. v. Occupational Safety and Health Review Comm'n, 861 F.2d 936, 942 (6th Cir.1988) ("The Act establishes three levels of violations--serious, nonserious, and de minimis."); Keco Indus., Inc., 11 O.S.H.C. (BNA) 1832, 1834 (Feb. 29, 1984) (Under the Act, violations are classified in three levels of severity: serious, not serious, and de minimis.)
 
 
 [2]
 I agree, however, with the majority's treatment of the jurisdictional issue and join in the majority opinion on that point. Because I conclude that the Commission does not have the authority to reclassify a violation as de minimis, I do not reach the question whether the employer must plead the de minimis nature of the violation as an affirmative defense
 
 
 [3]
 The Court continued, contrasting the role of the Commission:
 The Commission's function is to act as a neutral arbiter and determine whether the Secretary's citation should be enforced.... Its authority plainly does not extend to overturning the Secretary's decision not to issue or to withdraw a citation.
 .... Such a procedure would also allow the Commission to make both prosecutorial decisions and to serve as the adjudicator of the dispute, a commingling of roles that Congress did not intend.
 Id.
 
 
 [4]
 In the present case, not only did the Commission view itself as having the authority to determine into which of the severity levels the violation fell, it placed the burden of proof to show that the violation was more than de minimis on the Secretary. See Secretary of Labor v. Erie Coke Corp., No. 88-611, slip op. at 17-19 (OSHRC Apr. 10, 1992)
 
 
 [5]
 Subsection (j) provides:
 The Commission shall have authority to assess all civil penalties provided in this section, giving due consideration to the appropriateness of the penalty with respect to the size of the business of the employer being charged, the gravity of the violation, the good faith of the employer, and the history of previous violations.
 29 U.S.C. § 666(j).
 
 
 [6]
 The Act provides:
 For purposes of this section, a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.
 29 U.S.C. § 666(k).
 
 
 [7]
 The case law makes it clear that just because particular actions by the Commission could be classified as adjudicative in nature does not mean that the Commission will in fact have that authority. Instead, the courts must look to the unique division of functions adopted by Congress for the implementation of OSHA and evaluate whether the Secretary or the Commission was intended to carry out that function. See CF & I, 499 U.S. 144, 111 S.Ct. 1171 (rejecting the court of appeals' view that, because the power to declare what the law is is among the normal complement of adjudicative powers, courts should defer to the Commission's interpretation of the regulation rather than the Secretary's, and holding instead that courts must defer to the Secretary's interpretation because OSHA delegates legislative and policymaking functions exclusively to the Secretary); Cuyahoga, 474 U.S. at 5, 106 S.Ct. at 287 (rejecting the argument of the court of appeals that, because the Secretary had filed a complaint and answer, the Commission had assumed control over the case and therefore had authority to review the Secretary's withdrawal of the citation, and holding instead that the ability to withdraw a citation during litigation was a necessary adjunct to the Secretary's exclusive and unreviewable prosecutorial responsibilities)
 In both CF & I and Cuyahoga, the Supreme Court decided that functions arguably delegated to the Commission's adjudicatory authority were not actually so delegated because allowing the Commission to decide these issues would trench upon functions specifically assigned to the Secretary. Similarly, I believe that permitting the Commission to reclassify a violation as de minimis would allow it to determine whether or not a regulation should be enforced by requiring abatement of its violation. This is a decision expressly delegated to the Secretary's discretion through § 658(a), see supra at Part I, and which, in any case, clearly falls within the Secretary's exclusive policymaking and enforcement duties, see infra at Part IV.
 
 
 [8]
 The nature of a de minimis violation as a legal nullity is reflected in the fact that it cannot be challenged before the Commission. As the Commission explained in Super Excavators :
 Because the Secretary's citation to Super has been amended to a de minimis notice, there is no penalty or order that Super abate the practice cited. Because there are no legal consequences flowing from such a notice, we conclude that there is no legal controversy before us. We therefore will not address Super's arguments going to the merits of whether there was a violation.
 Id. (emphasis added); see also 29 U.S.C. § 659 (reviewable actions all flow from the issuance of a citation).
 
 
 [9]
 Additionally, the Secretary's initial decision to promulgate the regulation evinces his policy determination that compliance with the standard will promote employee health and safety. See 29 U.S.C. § 652(8) (1988) ("The term 'occupational safety and health standard' means a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment."); cf. General Electric, 576 F.2d at 561 (holding that an employer must have sought a variance or explained why it would have been inappropriate to do so before asserting a defense of a greater hazard because an employer's opinion as to the relative safety merits of compliance with a regulation cannot, at least in the first instance, be substituted for that of the Secretary)
 
 
 [10]
 It is also noteworthy that the Secretary's position in this case does not eviscerate or unduly limit the Commission's power. The only result of not allowing the Commission to reclassify a violation as de minimis is that it can no longer eliminate the abatement requirement when a violation has occurred. The Commission still retains the ultimate authority to determine whether or not a violation has occurred, to evaluate any applicable affirmative defenses, and to reduce or eliminate any fine associated with the citation